**KENDRA M. MATTHEWS**, OSB No. 965672
Email: kendra@boisematthews.com
BOISE MATTHEWS LLP
Fox Tower
805 S.W. Broadway, Suite #1900
Portland, OR 97205
Telephone: (503) 228-0487
Fax: (503) 227-5984

   Of Attorneys for Defendant Christian Avila-Suarez

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## Portland Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>                 Plaintiff,<br><br>       v.<br><br>**CHRISTIAN AVILA-SUAREZ,**<br><br>                 Defendant. | Case No:  3:21-CR-00077-13-IM<br><br>**DEFENDANT AVILA-SUAREZ'S SENTENCING MEMORANDUM** |

   Christian Avila-Suarez will appear before the Court on October 17, 2022, at 10:00 a.m. for sentencing. Mr. Avila-Suarez will appear at sentencing via video from the Federal Detention Center at Sheridan.

   On July 11, 2022, Mr. Avila-Suarez pled guilty to Conspiracy to Distribute Fentanyl (21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vi) and 846). His plea was entered pursuant to Fed. R. Cr. P. 11(c)(1)(B).

Page 1 -  DEFENDANT AVILA-SUAREZ'S SENTENCING
                MEMORANDUM

**BOISE MATTHEWS LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

18 U.S.C. § 3553(a) "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimborough v. United States*, 552 U.S. 85, 101 (2007) (quoting 18 U.S.C. § 3553(a)). Factoring in the totality of the relevant sentencing considerations, the defense asks the Court to conclude that a total term of 30 months is appropriate. The defense suggests that the prison term should be followed by a three-year term of post-prison supervision.

I.   **Guidelines Calculations and the Plea Agreement.**

The United States Probation Office (USPO) detailed the advisory guidelines calculation in Mr. Avila-Suarez' case in the presentence investigation report (PSR). PSR ¶¶ 32-41, 43-51. Neither party objected to the USPO's advisory guidelines calculations. The government is recommending another two-level variance, and the USPO factors that variance into its sentencing recommendation. The statutory basis for the variance is detailed in PSR paragraphs 11, 33 and 102. With that additional statute-based variance factored in, the adjusted advisory guidelines are as follows:

| Guidelines Provision | Offense Level |
| --- | --- |
| Base Offense (U.S.S.G. § 2D1.1(c)(8)) | 24 |
| Minor Role (U.S.S.G. § 3E1.2) | -2 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Adjusted U.S.S.G. Offense Level | 19 |
| Variance (Detailed in PSR ¶¶ 11, 33, 102) | -2 |
| Adjusted offense level with recommended variance | 17 |
| Advisory Range in Criminal History Category IV (17-IV) | 37 to 46 months |

//

Page 2 -  DEFENDANT AVILA-SUAREZ'S SENTENCING
         MEMORANDUM

**BOISE MATTHEWS LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

The defense expects that the government and the United States Probation Office (USPO) will recommend that the Court impose a term of 37 months imprisonment. The defense requests that the Court conclude that a term of 30 months imprisonment is "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2).

## II.   Nature and Circumstances of the Offense and the Offender.

Mr. Avila-Suarez's personal history, including his difficult childhood (which led to early, still unresolved, addiction issues) and his criminal history, is outlined in the PSR, and so Mr. Avila-Suarez will not repeat it here. Despite his hardships—and his serious mistakes and poor decisions along the way—Mr. Avila-Suarez is now in his thirties and, with treatment for his addictions, his steady work history demonstrates that he can be a productive member of the community. His work history in restaurants is summarized in paragraph 80 of the PSR. That list of restaurants reflects years of work—from around 2008 to 2015—in restaurant kitchens. Mr. Avila-Suarez reports he often had two kitchen jobs at the same time. When Mr. Avila-Suarez has managed his addiction issues, he is capable of not just working, but working hard and steadily.

When Mr. Avila-Suarez is not using, he is capable of even more. When he was initially released from prison in March 2018, he was doing quite well. He began the programming required as a part of his post-prison supervision. He was clean. He had a good job in roofing, which he enjoyed. He had stable housing.

//

Page 3 -   DEFENDANT AVILA-SUAREZ'S SENTENCING
MEMORANDUM

**BOISE MATTHEWS LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

Mr. Avila-Suarez's relapse on methamphetamine coincided with the onset of the global pandemic. The coincidence of these events upended his fragile stability. He began failing to meet his post-prison supervision obligations. He became unreliable at work and, eventually, lost his job. His positive, healthy relationships suffered as he began spending more time with others who used methamphetamine. In January 2021, his mother moved to Mexico, leaving him homeless. It was then that Mr. Avila-Suarez made the decisions that bring him to this Court for sentencing.

As the PSR summarizes, Mr. Avila-Suarez knew someone who wanted to purchase "blues" (pills laced with fentanyl) and he knew someone who could be a source for those blues. PSR ¶¶ 21-27. Mr. Avila-Suarez used the money he earned to eat, rent the occasional hotel room, and to maintain a steady stream of personal use methamphetamine. He had only one connection to the alleged Drug Trafficking Operation, and he did not speak to that person about its scope or otherwise advance in it. When his source was arrested on February 12, 2021, Mr. Avilia-Suarez's dealing stopped; his personal use of methamphetamine continued until his arrest in April 2021.

Mr. Avila-Suarez accepts full responsibility for the decisions that led to his conviction. He has rebuilt his relationships with sober family members; people who want to be a part of his life when he is released so long as he remains clean and sober. His hope is to rebuild the life he got a glimmer of in 2018 and 2019. With the sobriety he has gained while in custody, and the structure and available resources offered to people on federal post-prison supervision, he has the tools necessary to accomplish that goal.

Page 4 -  DEFENDANT AVILA-SUAREZ'S SENTENCING
MEMORANDUM

BOISE MATTHEWS LLP
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

The question before the Court is what term Mr. Avila-Suarez should serve in prison before he gets the opportunity to demonstrate through action—not words—his commitment to taking a different path with his life. The defense submits that while his criminal history (including these offenses occurring while he was on post-prison supervision) *and* the quantity of his sales are captured by a term in the low-end of the *adjusted* advisory guidelines range, other significant factors are not. Not addressed by a term in that range is the limited duration of Mr. Avila-Suarez's activity, the role addiction played in his decision-making, the particularly harsh conditions in which Mr. Avila-Suarez has been housed for the past nearly 18 months, and the lack of programming likely available to Mr. Avila-Suarez in prison. Those factors are relevant when this Court is considering what is a reasonable sentence under 18 U.S.C. § 3553(a) and, when those factors are considered, the defense suggests the Court should conclude that a term less than the adjusted advisory range is appropriate.

**III.   This Court Should Grant a Variance Due to the Nature of Mr. Avila-Suarez's Conditions of Confinement.**

As this Court is aware, since March 2020, jails and prisons throughout the country have been devastatingly impacted by the Covid-19 pandemic. Incarcerated individuals share bathrooms, sinks, showers, and telephones. They eat together and sleep in proximity. They lack the freedom to bathe regularly and are unable to effectively disinfect their surroundings. Unsurprisingly, these conditions fueled the spread of COVID-19 throughout jail facilities. Mr. Avila-Suarez is Hispanic, a fact that correlates

Page 5 -   DEFENDANT AVILA-SUAREZ'S SENTENCING
MEMORANDUM

BOISE MATTHEWS LLP
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

to higher susceptibility to contracting coronavirus and death in prison. *See* CDC, COVID-19 Hospitalization and Death by Race/Ethnicity, at https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html  (Hispanic or Latino persons are 2.0 times more likely to be hospitalized if they become ill and 1.8 times more likely to die) (last accessed 10/5/22).

While conditions relating to the pandemic have ebbed and flowed for those of us outside jail walls, conditions within the system have been consistently bad. The efforts to address the pandemic have led to institutions imposing increasingly draconian lockdown measures, sharply curtailing contact with family and friends; cancelling educational and rehabilitative programs; eliminating or reducing needed medical care; and providing misinformation that frightens, destabilizes, and demoralizes. *See* Amended Complaint, *Stirling v. Salazar*, Case No. 20-cv-00712-SB (D. Or. June 30, 2020), ECF No. 16; *see id*. ECF 98-1 (February 2022, Declaration of Michael T. Puerini, M.D.) ("The system of care at FCI Sheridan does not allow for adequate access to care. . . . . The system of care for inmate patients in their non-emergency healthcare requests is further fraught with difficultly in that inmates are not able to submit their healthcare requests on a daily basis."); *id.* ECF 98-2 (February 2022, Fifth Declaration of Courtney Withycombe) ("On January 4, 2022, an inmate sent an email stating: if they are short staffed, we get out for an hour or two then surprised with a lockdown. the weekends is when it happens most. they'll call count and we just don't come out again." And "On January 5, 2022, an inmate

Page 6 -  DEFENDANT AVILA-SUAREZ'S SENTENCING MEMORANDUM

BOISE MATTHEWS LLP
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

sent an email stating: During the covid-19 pandemic we still are only allow recreation 1x a week and no programming to better ourselves.").

In part, the conditions have remained somewhat dire even in the face of an improving health landscape due to severe staffing shortages at Sheridan. *See, e.g.*, Conrad Wilson, *Inmates at Oregon's Only Federal Prison Report Dire Medical Care,* OPB (February 11, 2022) https://www.opb.org/article/2022/02/11/oregon-prison-federal-sheridan-covid-inmate-death/ (last accessed 10/9/2022) ("For the last two years, staffing shortages and efforts to control the virus have caused lengthy lockdowns across federal prisons, leaving inmates in their cells for hours or days.").

This Court is also aware of the degree to which Oregon stakeholders are monitoring and attempting to ensure the best possible conditions at Sheridan, and, yet, struggles for adequate care and programming, as well as more fundamentally humane conditions continue. Mr. Avila-Suarez has spent most of his pretrial detention housed in the J2 Unit at the Federal Detention Center at Sheridan; this unit has, in many ways, experienced the most difficult prison conditions in Oregon. Not only have there been several lockdowns and other measures in response to the pandemic and staff shortages, but there has also been disturbing reports of retaliation and abuse centered on the inmates in J2. *See, e.g.*, *Stirling v. Salazar*, Case No. 20-cv-00712-SB (D. Or. June 30, 2020), ECF No. 113-1 (July 2022, Seventh Declaration of Courtney Withycombe) (Documenting a 10-day lockdown in the J2 Unit in July 2022, in which conditions were particularly harsh and intolerable); *see also* Maxine Bernstein, *Oregon's Federal Public*

Page 7 - DEFENDANT AVILA-SUAREZ'S SENTENCING MEMORANDUM

BOISE MATTHEWS LLP
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

*Defender Seeks Investigation Into Complaints of Retaliatory 'Shakedown' Of Inmates by Guards at Sheridan,* The Oregonian (August 2, 2022).

This Court should exercise its authority to impose a variance based on the conditions of confinement Mr. Avila-Suarez has experienced since April 2021 and this Court can anticipate he will continue to experience for the foreseeable future. *See, e.g.*, *United States v. Goodman*, 807 Fed. Appx. 938, 940-41 (11th Cir. 2020) (Eleventh Circuit reviewing *de novo* a challenge based on an assertion district court erroneously believed that it lacked authority to impose a variance or depart downward based on defendant's alleged pretrial confinement conditions; denying relief because it concluded record demonstrated district court understood its authority); *see also, United States v. Bakeas*, 987 F. Supp. 44, 50 (D. Mass. 1997) ("[A] downward departure is called for when, as here, an unusual factor makes the conditions of confinement contemplated by the guidelines either impossible to impose or inappropriate."); *United States v. Sutton*, No. 07-426 (KSH), 2007 WL 3170128 (D.N.J. Oct. 25, 2007) (varying downward because of the overcrowded, unacceptable conditions at the pretrial facility); *United States v. Pacheco-Soto*, 386 F. Supp. 2d 1198 (D.N.M. 2005) (granting departure because the defendant's deportable status results in conditions of confinement that are "severe and unfair"); *United States v. Noriega*, 40 F. Supp. 2d 1378 (S.D. Fla. 1999) (departing downward where there "is little question that [segregated confinement] is a more difficult type of confinement than in general population. For some, the consequences of such deprivation can be serious."); *McClary v. Kelly*, 4 F. Supp. 2d. 195, 207 (W.D.N.Y.

Page 8 -   DEFENDANT AVILA-SUAREZ'S SENTENCING
                      MEMORANDUM

**BOISE MATTHEWS LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

1998) ("[T]hat prolonged isolation from social and environmental stimulation increases the risk of developing mental illness does not strike this court as rocket science. Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally.").

A related, but slightly different consideration arises from the current conditions at FCI Sheridan. Although rehabilitation is one of the fundamental purposes of sentencing, rehabilitation programming is currently very difficult to administer in the BOP. This is particularly true in facilities—like FCI Sheridan—that are under enhanced restrictions, which impact the number of volunteers who can administer programming, and the number of people who can participate in the programming. While Mr. Avila-Suarez's personal history certainly suggests that he would be an ideal candidate for the type of programming offered pursuant to the First Step Act, because his offense involved fentanyl, he is ineligible to earn increased "earned time credits" as part of his participation in such programming. Mr. Avila-Suarez does not seek sympathy for his exclusion from the incentive programs—it results from his conviction—but his ineligibility for those incentives moves him to the bottom of the list of eligible participants in the programs themselves. So long as Sheridan continues to deal with staffing shortages and the pandemic, it is fair for this Court to presume that Mr. Avila-Suarez will have, at most, sporadic access to rehabilitative programming while in custody. Thus, when considering "the need for the sentence imposed . . . to provide the

Page 9 -  DEFENDANT AVILA-SUAREZ'S SENTENCING
             MEMORANDUM

BOISE MATTHEWS LLP
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

defendant with needed educational and vocational training," 18 U.S.C. § 3553(a)(2)(D), this Court should readily conclude that an increased prison term will not serve that goal.

Nor would an increased term serve a desire to deter future criminal conduct. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.; see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity.").

In sum, granting a variance would appropriately address the conditions of confinement and lack of useful programming for Mr. Avila-Suarez in prison without weakening the deterrent component of sentencing on either a macro or micro level.

//
//
//
//
//
//
//

Page 10 - DEFENDANT AVILA-SUAREZ'S SENTENCING MEMORANDUM

## IV. Conclusion.

For the reasons discussed above, Mr. Avila-Suarez asks this Court to conclude that a term of 30 months' imprisonment, to be followed by a term of three years of supervised release is "sufficient, but not greater than necessary, to comply with the purposes" of 18 U.S.C. § 3553(a)(2).

DATED this 12th day of October, 2022.

Respectfully submitted,

BOISE MATTHEWS LLP

/s/ *Kendra M. Matthews*
KENDRA M. MATTHEWS, OSB No. 965672
(503) 228-0487
Of Attorneys for Defendant Avila-Suarez

Page 11 -  DEFENDANT AVILA-SUAREZ'S SENTENCING MEMORANDUM

**BOISE MATTHEWS LLP**
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing DEFENDANT AVILA-SUAREZ'S SENTENCING MEMORANDUM on the following attorneys by causing it to be electronically filed on the 12th day of October, 2022.

>Andrew Ho
>Assistant United States Attorney
>Steven T. Mygrant
>Assistant United States Attorney
>United States Attorney's Office
>Suite 600
>1000 S.W. Third Avenue
>Portland, OR 97204-2902

Respectfully submitted,

BOISE MATTHEWS LLP

/s/ *Kendra M. Matthews*
KENDRA M. MATTHEWS, OSB No. 965672
(503) 228-0487
Of Attorneys for Defendant Avila-Suarez

CERTIFICATE OF SERVICE

BOISE MATTHEWS LLP
805 S.W. Broadway, Suite 1900
Portland, OR 97205
Telephone: (503) 228-0487
Facsimile: (503) 227-5984